**AMITUANAI IOSEFA, Plaintiff,**

**v.**

**SATAOA KALEUATI, TUIAGAMOA TAVAI TOMASI, and KERETA VAILI, Defendants.**

High Court of American Samoa
Land and Titles Division

LT No 19-00

July 15, 2002

Before RICHMOND, Associate Justice, LOGOAI, Chief Associate Judge, and ATIULAGI, Associate Judge.

Counsel: For Plaintiff, Katopau T. Ainu`u
For Defendants, Marie A. Lafaele

### OPINION AND ORDER

Plaintiff Amituanai Iosefa ("Amituanai") brought this action to evict defendants Sataoa Kaleuati ("Sataoa"), Tuiagamoa Tavai Tomasi ("Tuiagamoa"), and Kereta Vaili ("Kereta") from certain land. The secretary of Samoan affairs held unsuccessful mediation hearings on the dispute on August 9 and September 27, 2000, and issued a certificate of irreconcilable dispute on September 28, 2000. Amituanai served a 30-day eviction notice, dated October 4, 2000, on Tuiagamoa, Sataoa, and Kereta, and on November 22, 2000, when they did not vacate the land, he filed this action.

### Discussion

Amituanai is the sa`o (head chief) of the Amituanai family of the Village of Malaeloa, American Samoa. Tuiagamoa is the sa`o of the Tuiagamoa family of the same village. Sataoa and Kereta are members of the Tuiagamoa family.

The land at issue is approximately 4.7 acres in Malaeloa, American Samoa. Kereta constructed a residence on the land in 1990 ("the Kereta house"). Sataoa and his family presently reside in the Kereta house. Amituanai claims that the Kereta house is on the Amituanai family's communal land named "Olovalu." Tuiagamoa claims that the Kereta house is on the Tuiagamoa family's communal land named "Lefiso."

#### A. The Holding of *Tuileata v. Amituanai*

In *Tuileata v. Amituanai*, 4 A.S.R.2d 168, 170 (Land & Titles Div. 1987), aff'd, 8 A.S.R.2d 173 (App. Div. 1988), this Court held that the

Amituanai family owned and could register approximately 36.62 acres of "Olovalu" as the family's communal land. The approximately 4.7 acres at issue lie within the 36.32 acres of "Olovalu." Complying with the trial Court's decision in *Tuileata*, the territorial registrar registered this portion of "Olovalu" as the Amituanai family's communal land on June 3, 1987. The boundaries of the registered portion are established by Amituanai's survey of November 16, 1985, presented in *Tuileata*, except for a small area in the southeast corner not relevant to the present case. Amituanai discovered that the Kereta house was erected within the registered portion as a result of a resurvey in 1998.

None of the witnesses during the trial, including two professional surveyors, contested the location in the field of either the survey of the approximately 36.62 acres of "Olovalu" registered as the Amituanai family's communal land, or of the approximately 4.7 contested acres within the registered land.

After hearing the testimony and receiving other evidence, the Court inspected the land in the presence of Amituanai, Tuiagamoa, and their respective counsel. Clearly, the Kereta house, or a substantial portion of it, is situated within the registered 36.62 acre portion of the "Olovalu."

Tuiagamoa has held the *sa`o* title of the Tuiagamoa family since 1978. Significantly, *Tuileata* was initiated when Tuileata Mu Manumaleuga ("Tuileata") attempted to register another portion of "Olovalu" as the Tuileata family's communal land in 1984. The land Tuileata claimed was located a considerable distance from the land Tuiagamoa now claims. The 1984 registration offer was duly noticed, and Amituanai, Tuiolemotu Fa`aopega ("Tuiolemotu"), and others, but not Tuiagamoa, objected to the registration. The matter was eventually referred to this Court for judicial resolution. The Court had several surveys, including Amituanai's survey now at issue, to consider. The Court held that the Amituanai family owned all but a small portion of the land included in Amituanai's survey and authorized registration of the land owned as the Amituanai family's communal land. Amituanai's registration, however, was accomplished without following formal notice and other statutory requirements.

B. Tuiagamoa's Claims on Legal Issues

Tuiagamoa asserts that he was not party to *Tuileata* and is therefore not bound by that decision as a matter of *res judicata*. We note at this point that Malaeloa is divided into two distinct sub-villages. Amituanai resides in one named Ituau. Tuiagamoa resides in the other named Aitulagi. The Tuiolemotu title is also appurtenant to the Aitulagi sub-village. The Tuiagamoa and Tuiolemotu families are related, though no precise

connections are in evidence. Tuiolemotu's claim in *Tuileata* was to land remote from Tuiagamoa's present land claim. Moreover, in *Tuileata*, Amituanai and Tuiolemotu claimed distinct, adjacent lands, except for part of the same small area in Amituanai's survey noted above, which was not included in the Court's registration authorization because Amituanai, Tuiolemotu, and other claimants to this small area asked the court to allow them to settle the boundaries in this area. In essence, Amituanai and Tuiolemotu were not adversaries with each other in *Tuileata*.

Tuiagamoa further maintains that he had no reason to respond to the notice of Tuileata's offer to register land remote from his family's land claim, and had neither actual nor constructive knowledge of Amituanai's land claim in 1984, unnoticed survey in 1985, and unnoticed registration in 1987. Tuiagamoa argues that he is therefore not prevented from pursuing his family's land claim by any notice preclusion.

We agree with Tuiagamoa's position on the *res judicata* issue but disagree with his position on the notice issue.

C. The *Res Judicata* Issue

Tuiagamoa was not a party to *Tuileata*. Even though the Tuiagamoa and Tuiolemotu families are apparently related, Tuiagamoa had no interest in the land claimed by Tuiolemotu. The connection between the two families does not constitute privity for *res judicata* purposes. The *Tuileata* decision constitutes neither issue nor party privity preclusion to Tuiagamoa's land claim in this case.

D. The Title Registration Notice Issue

Amituanai's title registration of 32.62 acres of "Olovalu" in 1987, made pursuant to judicial authorization, is conclusive as between Amituanai, on one hand, and Tuileata, Tuiolemotu and other parties to *Tuileata*, on the other hand. Tuileata offered to register a large portion of "Olovalu" in 1984. The offer was processed, in compliance with the notice and other statutory requirements, but the court's decision in *Tuileata* went largely against him. Tuileata's offer to register, however, could not adversely effect Tuiagamoa's claim to land remotely located from the land claimed by Tuileata.

Amituanai's 1985 survey and 1987 judicially authorized registration of most of his surveyed land were done without compliance to the notice and other prescribed statutory procedures with respect to non-parties to *Tuileata*. Therefore, Tuiagamoa is not precluded, on the basis of constructive notice of Amituanai's registration, from claiming that the

Tuiagamoa family is the true owner of the land occupied by the Vaili house. *See Faleafine v. Suapilimai,* 7 A.S.R.2d 108, 113 (Land & Titles Div. 1988).

Tuiagamoa's claim that he was without actual knowledge of Amituanai's survey or title registration, however, borders on the incredible. Sataoa has cultivated areas within the land surveyed by Amituanai for many years, first alongside of his parents beginning in 1962, and then in his own right beginning in 1968 after his marriage to the daughter of Tuiagamoa's predecessor to the *sa'o* title. As a perennial planter in the area, Sataoa must have known about the survey that Amituanai had made of the portion of "Olovalu" now registered as the Amituanai family's communal land and *Tuileata* while that case was pending. As a loyal member of the Tuiagamoa family, providing *tautua* (traditional service) to the *sa'o* of the family, Sataoa would have informed Tuiagamoa of Amituanai's survey and the *Tuileata* judicial proceedings.

■ Tuiagamoa must have known about the survey and the *Tuileata* judicial proceedings, at least from Sataoa as his informant, and most likely from other sources as well. Involving the families of several Malaeloa *matai,* the *Tuileata* case would have been common knowledge in the village while the case was ongoing. Tuiagamoa failed in his duty to timely investigate the impact of the *Tuileata* case on his perception of the Tuiagamoa family's communal land interests. He did not take any steps to counter Amituanai's claim during the *Tuileata* proceedings, which were commenced in 1984, approximately 16 years before the current action was filed, and were not concluded until 1987, about three years later. Despite his inaction, Tuiagamoa more than likely knew at the time of the *Tuileata* decision, and we find he did know, that the *Tuileata* court authorized Amituanai to register the surveyed 32.62 acres as the Amituanai family's communal land and that the territorial registrar then complied with Amituanai's request to register this land in this manner. Tuiagamoa also did not take any steps to invalidate the registration until he was called upon to defend this action some 13 years later. A classic example of laches is presented.

■ Laches is unreasonable delay of one party's assertion of rights resulting in the other party's undue prejudice. *Siofele v. Shimasaki,* 9 A.S.R.2d 3, 14-15 (Trial Div. 1988); *see also Simmons Creek Coal Co. v. Duran,* 142 U.S. 417 (1892). A claimant to land ownership is charged with actual notice upon receiving information that would put a person of ordinary prudence to an inquiry that would lead to knowledge of adverse title. *See Faleatua v. Tauiliili,* 19 A.S.R.2d 122, 123-24 (Land & Titles Div. 1990).

Tuiagamoa had actual knowledge of Amituanai's claim. He did not exert

his own claim for a time period of at least 13 years and as much as 16 years. This time frame constituted unreasonable delay under the circumstances. The delay injured Amituanai by forcing multiple litigation of the same issue, as well as leading to Amituanai's reliance on Tuiagamoa's non-assertion of alleged rights.

Based on Tuiagamoa's actual knowledge, the registration, pursuant to the Court's decision in *Tuileata*, of approximately 32.92 acres, including the approximately 4.7 acres at issue, as the Amituanai family's communal land is also valid as against Tuiagamoa and his family.

### Order

1. As between Amituanai and all other Amituanai family members of the Amituanai, on one hand, and Tuiagamoa, Sataoa, Kereta, and all other Tuiagamoa family members, on the other hand, the registration on June 3, 1987, of approximately 32.62 acres of "Olovalu," encompassing the approximately 4.7 acres at issue, as the Amituanai family's communal land is valid and effective.

2. Tuiagamoa, Sataoa, Kereta, and all other Tuiagamoa family members are evicted from the approximately 4.7 acres.

3. Tuiagamoa, Sataoa, and Kereta shall remove the Kereta house from the 4.7 acres within 90 days after the entry date of this order. The Kereta house shall become the property of the Amituanai family if it is not removed from the 4.7 acres within the 90-day period.

4. Tuiagamoa, Sataoa, Kereta, and all other Tuiagamoa family members shall cease farming any portion of the 4.7 acres after 90 days from the entry date of this order, unless Amituanai permits them to continue this activity. During the 90-day period, they may harvest their agricultural produce. After the 90-day period, the agricultural crops and trees planted by them within the 4.7 acres shall become the property of the Amituanai family.

It is so ordered.